# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## JAC 17-618

## STATE IN THE INTEREST OF L.S.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 17-JV-18661
HONORABLE LEWIS H. PITMAN, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## VAN H. KYZAR
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Marc T. Amy, D. Kent Savoie, and Van H. Kyzar, Judges.

**AFFIRMED**

S. Marie Johnson
Public Defender's Office
St. Martin Parish – 16th JDC
106 W. Berard Street
St. Martinville, LA 70582
(337) 394-1446
COUNSEL FOR APPELLANT:
     L. B. (father)
     K. S. (mother)

Shentell Brown
Assistant District Attorney
16th Judicial District Attorney Office
415 S. Main Street
St. Martinville, LA 70582
(337) 394-2220
COUNSEL FOR APPELLEE:
     State of Louisiana

Denise Henderson
Mental Health Advocates
302 Dulles St., Rm-U47
Lafayette, LA 70506
(337) 262-2030
COUNSEL FOR APPELLEE:
     L. S. (child)

**KYZAR, Judge.**

The appellants, K.S. and L.B.,[1] appeal from a judgment adjudicating their minor child, L.S., as being a child in need of care and ordering family services. On considering the record before us, we affirm the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

The appellants, K.S. and L.B., are the mother and father, respectively, of the minor child, L.S., born October 6, 2016. Immediately following the birth of the child, the State of Louisiana, Office of Juvenile Justice, Department of Children and Family Services ("DCFS"), was notified the child was born positive for the presence of amphetamines in its system and that the mother had also tested positive for the same drug at the time of the birth. An investigator was assigned the case and immediately went to the hospital to commence an investigation into allegations of abuse or neglect. On January 31, 2017, a child in need of care petition was filed alleging as follows:

> [L.S.][2] is a victim of Parental Neglect for being a drug exposed newborn when she was born on October 7, 2016 [sic]. The infant's meconium was positive for amphetamines and the mother's urine was positive for amphetamines, benzos and cocaine. [K.S.] admitted to using drugs throughout her pregnancy and could not provide prescriptions for the amphetamines. This is Ms. [K.S.'] second drug exposed newborn.

> All reasonable, available and appropriate attempts and efforts have been made to encourage and assist this family to deal with the allegations set forth herein and to provide all available services but to no avail and said attempts have been exhausted. Ms. [K.S.] admits to being overwhelmed with the issues in her life. However, she does not feel she needs any of the recommended services such as Early Steps and Healthy Start.

---

[1] The initials of the children and their parents are used to protect the identity of the minor child. Uniform Rules—Courts of Appeal, Rules 5-1, 5-2.

[2] The original petition set forth the full names of the parties. We have only included their initials herein.

3

An adjudication hearing was held on April 3, 2017. At the conclusion of the hearing, the trial court found the child to be a child in need of care and ordered family services. As part of the judgment, DCFS was ordered to look into the possibility of providing or finding financial assistance for the parents to offset the rehabilitative treatment services for the mother at an inpatient substance abuse rehabilitation facility. A review hearing was further set for October 19, 2017. This appeal was thereafter taken by the parents, K.S. and L.B.

## ASSIGNMENT OF ERROR

The appellants assert one assignment of error on appeal, as follows:

Whether the trial court erred in granting judgment in favor of the State of Louisiana adjudicating the minor child, L.S., a child in need of care?

## OPINION

In *State In Interest of S.C.*, 16-740, p. 2 (La.App. 3 Cir. 4/19/17), 217 So.3d 642, 644, the standard of appellate review applicable in child in need of care cases was recognized as follows:

"We review the juvenile court's findings of fact under the manifest error standard of review[.]" *State ex rel. J.Y.M.*, 09-1335, p. 5 (La.App. 3 Cir. 8/4/10), 45 So.3d 1128, 1132. In *State ex rel. D.H.*, 04-2105, pp. 7-8 (La.App. 1 Cir. 2/11/05), 906 So.2d 554, 560, the first circuit noted:

[I]t is important that the appellate court not substitute its own opinion when it is the juvenile court that is in the unique position to see and hear the witnesses as they testify. [*In re A.J.F.*, 00-948 (La. 6/30/00), 764 So.2d 47.] Where there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even when the appellate court may feel that its own evaluations and inferences are as reasonable as those of the juvenile court. *Id.*; *see Rosell v. ESCO*, 549 So.2d 840 (La.1989). If the juvenile court's findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse, even though convinced that had it been

4

sitting as the trier of fact, it would have weighed the evidence differently. *Id.*; *see Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 2001-2217 (La. 4/3/02), 816 So.2d 270.

In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and if such a basis does exist, (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. *See Stobart v. State, through DOTD*, 617 So.2d 880 (La.1993). If there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *Id.*

Thus, in the instant case, we are tasked with determining whether the trial court committed manifest error in finding the minor L.S. to be a child in need of care based upon the evidence presented at the adjudication hearing on April 3, 2017. The grounds for finding that a child is in need of care are set out in La.Ch.Code art. 606, as follows:

A. Allegations that a child is in need of care must assert one or more of the following grounds:

(1) The child is the victim of abuse perpetrated, aided, or tolerated by the parent or caretaker, by a person who maintains an interpersonal dating or engagement relationship with the parent or caretaker, or by a person living in the same residence with the parent or caretaker as a spouse whether married or not, and his welfare is seriously endangered if he is left within the custody or control of that parent or caretaker.

(2) The child is a victim of neglect.

(3) The child is without necessary food, clothing, shelter, medical care, or supervision because of the disappearance or prolonged absence of his parent or when, for any other reason, the child is placed at substantial risk of imminent harm because of the continuing absence of the parent.

(4) As a result of a criminal prosecution, the parent has been convicted of a crime against the child who is the subject of this proceeding, or against another child of the parent, and the parent is

now unable to retain custody or control or the child's welfare is otherwise endangered if left within the parent's custody or control.

(5) The conduct of the parent, either as principal or accessory, constitutes a crime against the child or against any other child.

(6) The child is a victim of human trafficking or trafficking of children for sexual purposes.

> *Subpar. (A)(7) effective when a child, who is a victim of commercial sexual exploitation, human trafficking, or trafficking of children for sexual purposes perpetrated by someone other than a parent or caretaker, becomes an eligible victim for which federal match funds are available through Title IV-E of 47 U.S.C. 672*

(7) The child is a victim of commercial sexual exploitation, human trafficking, or trafficking of children for sexual purposes perpetrated by any person regardless of their relationship to the child.

B. A child whose parent is unable to provide basic support, supervision, treatment, or services due to inadequate financial resources shall not, for that reason alone, be determined to be a child in need of care.

Although the appellants assert that the trial court committed manifest error in its determination that L.S. is a child in need of care, the argument is narrowed by the claims that the trial court erred in allowing the State to introduce the drug screen reports showing that the baby and the mother tested positive for amphetamines, and as to the mother, other drugs as well. Without this evidence, appellants claim, the remaining evidence is insufficient to warrant the findings of the trial court.

Megan Elaire, an investigator for DCFS, was the only witness and testified on behalf of the State at the adjudication hearing. She stated that she was called to the hospital to investigate allegations that L.S. was a drug exposed newborn and that the mother, K.S., had also tested positive for drugs. While testifying, the following colloquy occurred:

6

Q: And to what allegations were you called out to investigate?

A: We received the report on October 7, 2016, stating that [L.S.']
urine screen was positive for amphetamines and [K.S.'] drug screen
was positive for amphetamines, [benzos] and cocaine.

Counsel for the parents objected to the results of the drug screen but not to the fact that she was called out for a substance exposed newborn, arguing the specific results of the screen were hearsay. The State countered that the evidence was admissible under the business records exception to the hearsay exclusionary rule. The trial court allowed the State to lay a foundation for the introduction of the evidence and ultimately allowed its introduction, as well as the State's introduction of the drug screen report of the hospital showing that the child and the mother tested positive for amphetamines and that the mother tested positive for benzodiazepines and cocaine. The State contended, in addition to the business records exception, that the evidence was also admissible pursuant to La.R.S. 15:499, et seq.[3] Counsel for the parents argued that La.R.S. 15:499, et seq. allows for the introduction of criminalistics laboratory reports and certificates in criminal proceedings, as opposed to non-investigatory drug screen records of a hospital in

[3] Louisiana Revised Statutes 15:499 provides in pertinent part as follows:

A. All criminalistics laboratories established by laws of this state or by laws of the United States, and all coroners, forensic pathologists, and other persons, partnerships, corporations, and other legal entities practicing in fields of knowledge and expertise in the gathering, examination, and analysis of evidence by scientific means are authorized to make proof of examination and analysis of physical evidence by the certificate of the person making the examination or analysis. Such certificate shall list:
(1) The date and time such evidence was delivered to such facility.
(2) The name of the person making such delivery, and the person receiving same.
(3) A brief description of the evidence.
(4) The type of examination or analysis requested.
(5) The name of the person making the examination or analysis.
(6) The date or dates of the examination or analysis.
(7) The results of the examination or analysis.

Louisiana Revised Statutes 15:500 provides:

In all criminal cases and in all cases in juvenile or family courts which are of a criminal nature, and in civil forfeiture proceedings arising from criminal activity, the courts of this state shall receive as evidence any certificate made in accordance with R.S. 15:499 subject to the conditions contained in this Section and R.S. 15:501. The certificate shall be received in evidence as prima facie proof of the facts shown thereon, and as prima facie proof of proper custody of the physical evidence listed thereon from time of delivery of said evidence to the facility until its removal therefrom.

juvenile courts. The trial court ultimately allowed the introduction of the reports of the drug screens, ruling as follows:

> Well, I agree that the Melendez notice was not appropriate at this time because this is not a criminal matter and that is strictly limited to criminal investigations and documentations. On the other hand it was documents which were presented to the department of Children's and Family Services in connection with an ongoing investigation and I'm going to accept them at this time.

Appellants argue that without this evidence, the only other evidence offered by the State, through the testimony of Ms. Elaire, is that the child was released from the hospital to home after only a couple of days with no residual problems. Thus, appellants assert that the evidence does not support the finding that L.S. is a child in need of care in the absence of the improperly admitted hearsay evidence.

Louisiana Children's Code Article 663(A) provides, with relation to the rules of evidence applicable to adjudication hearings in juvenile court, that the "hearing shall be conducted according to the rules of evidence applicable to civil proceedings." As a result, we look to the Louisiana Code of Evidence to determine first whether the trial court erred in allowing Ms. Elaire's testimony concerning receipt of the verbal report by the hospital staff that the mother and child tested positive for amphetamines and second whether it further erred in allowing the written drug screen reports showing the same results to be introduced.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La.Code Evid. art. 801(C). Given the unreliable nature of such evidence, hearsay is inadmissible at adjudication hearings unless it falls under one of the enumerated statutory exceptions found in La.Code Evid. art. 803. The Code of Evidence also provides in article 1101(A)(1) that "[j]uvenile adjudication

hearings in non-delinquency proceedings shall be governed by the provisions of this Code applicable to civil cases." The general rule of the inadmissibility of hearsay evidence is one such rule of evidence enforceable in juvenile adjudication proceedings. *State ex rel. D.H.*, 04-2105 (La.App. 1 Cir. 2/11/05), 906 So.2d 554; *State In The Interest of Prestridge*, 323 So.2d 868 (La.App. 2 Cir. 1975); *State In The Interest of Garza*, 388 So.2d 458 (La.App. 2 Cir. 1980); *State In The Interest of Rotolo*, 361 So.2d 468 (La.App. 4 Cir. 1978); and *State In The Interest of Clark*, 400 So.2d 334 (La.App. 4 Cir. 1981).

In *Bandy v. Bandy*, 07-849 (La.App. 3 Cir. 12/5/07), 971 So.2d 456, the defendant father in a child custody dispute offered as evidence a drug screen report showing that he tested negative for drugs in his system. The reports were part of his work records as the screens were required for his employment. The trial court allowed the evidence pursuant to the "business records" exception to the hearsay rule. We reversed, finding the evidence to be inadmissible hearsay, and therein provided the following:

> In the present case, Patrick represented himself and introduced the drug test results into evidence without calling a single witness to testify as to their authenticity and to the practices under which the information was gathered. Patrick indicated that they were faxed to the court by the laboratories themselves, but there was no testimony regarding the collection process or the chain of command, and no testimony identifying the defendant, Patrick, as the contributor of the hair and urine samples. The Louisiana Supreme Court in *State v. Juniors*, 03-2425 (La.6/29/05), 915 So.2d 291, *cert. denied, Juniors v. Louisiana*, 547 U.S. 1115, 126 S.Ct. 1940, 164 L.Ed.2d 669 (2006), affirmed a trial court's refusal to admit drug test results, stating as follows:

>> The witness laying the foundation for the admissibility of business records need not have been the preparer of the records; however, the witness must be familiar with and able to testify from personal knowledge about the bookkeeping and accounting procedures of the entity whose business records are sought to be

introduced. *Cole Oil & Tire Co., Inc. v. Davis*, 567 So.2d 122, 129 (La.App. 2 Cir.1990). "Under Art[icle] 803(6), it is essential that a custodian or other qualified witness testimonially explain the record-keeping procedures of the business and thus lay the foundation for the admissibility of the records." *Id.* If the foundation witness cannot vouch that the requirements of the Code of Evidence have been met, the evidence must be excluded. *Id. See also, State v. Borne*, 96-1130 (La.App. 4 Cir. 3/19/97), 691 So.2d 1281, *writ denied*, 97-1021 (La.10/3/97), 701 So.2d 197 [*cert. denied, Borne v. Louisiana*, 523 U.S. 1009, 118 S.Ct. 1196, 140 L.Ed.2d 325 (1998) ].

*Bandy*, 971 So.2d at 462.

In this case, as in *Bandy*, there was no foundation evidence as is required to allow the written reports of the drug screen results pursuant to the business records exception to the hearsay rule. No witness familiar with the sample-collecting or record-keeping practices of the hospital laboratory testified at trial. In fact, no one from the hospital, which administered the drug screens, testified at all. Further, the records did not meet the requirements to be admissible as criminal laboratory reports under La.R.S. 15:499, et seq. as correctly noted by the trial court. Thus, we find that the records were, in fact, hearsay and not admissible pursuant to any exception provided for by La.Code Evid. art. 803. Accordingly, we find the introduction of the drug screen reports, as allowed by the trial court, to be improper hearsay evidence. However, such a finding does not end our inquiry.

In *Evans v. Lungrin*, 97-0541, 97-0577 (La. 2/6/98), 708 So.2d 731, the supreme court recognized that where a legal error or ruling, particularly as to the introduction of evidence, so impacts the fact finding process that a manifest error review is not possible, appellate courts should then exercise a de novo review, stating:

10

> [W]here one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record and determine a preponderance of the evidence. *Ferrell v. Fireman's Fund Ins. Co.,* 94-1252 (La.2/20/95); 650 So.2d 742, 747, *rev'd in part, on other grounds,* 96-3028 (La.7/1/97); 696 So.2d 569, *reh'g denied,* 96-3028 (La.9/19/97); 698 So.2d 1388. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. *See Lasha v. Olin Corp.,* 625 So.2d 1002, 1006 (La.1993). Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. *See Lasha,* 625 So.2d at 1006. When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts *de novo. Lasha,* 625 So.2d at 1006.

*Lungrin,* 708 So.2d at 735. This standard was applied in a similar child in need of care case in *State in Interest of A.H.,* 51,053 (La.App. 2 Cir. 9/28/16), 206 So.3d 1081, *reh'g denied* (10/19/16), *writ denied,* 214 So.3d 867 (La. 1/9/17). There, the second circuit held that the trial court improperly allowed the introduction of hearsay testimony by the DCFS case worker and a detective with the sheriff's office as to the results of a drug screen on the mother and the 11 year old child showing positive for amphetamines. In reviewing the trial court's decision in light of the improperly admitted evidence, the court stated as follows:

> Although the testimony offered by the witnesses regarding the results of the drug tests was inadmissible hearsay and should not have been admitted during the adjudication hearing, the error alone does not warrant a reversal. A reversal requires application of the manifest error doctrine. The court must review the entire record *de novo* for properly admitted evidence that establishes a reasonable factual basis for the trial court's finding. If such a basis does not exist, the appellate court must conclude that the fact finder is clearly wrong or manifestly erroneous.

> At an adjudication hearing, the state has the burden to prove the allegations of the petition by a preponderance of evidence. La. Ch. C. art. 665; *State in Int. of JK,* 33,878 (La.App. 2 Cir. 6/23/00), 764 So.2d 287, *writ denied,* 2000–2637 (La. 10/6/00), 771 So.2d 83.

11

> Proof is sufficient to constitute a preponderance of the evidence when the entirety of the evidence, both direct and circumstantial, establishes that the fact or causation sought to be proved is more probable than not. *Talbot v. Talbot*, 2003–0814 (La. 12/12/03), 864 So.2d 590; *Pearce v. Medallion Const.*, 36,351 (La.App. 2 Cir. 11/6/02), 830 So.2d 576.

*Id.* at 1087.

In the instant case, we find that there was sufficient evidence properly before the court to support the finding that the child, L.S., was a child in need of care. Pursuant to the investigation by DCFS, Ms. Elaire testified that she questioned K.S., the mother, and stated as follows:

> From there we staffed the case and placed [K.S.] into family services. [K.S.] did admit to using opioids. She said she was using Oxycodone that she was getting off the streets at the time. She was willing to [cooperate] with the agency and seek substance abuse treatment. You know she stated to me at the hospital that in fact she had an appointment with Dr. John on 10/13/2016 at 9:00 a.m. for mental health and substance abuse treatment. She notified me while I was visiting her at the hospital as well.

In addition, Ms. Elaire testified that K.S. had previously been involved with the agency in another case involving a child born with drugs in its system. Although the appellant objected to later questioning concerning this case, the fact of the prior drug positive birth was not objected to. Ms. Elaire further testified that K.S. was in drug treatment at the time of the hearing. Indeed, the ruling of the trial court indicates that more emphasis was placed on the referenced evidence than on the specific drug screen results, as the following statement of the court reflects:

> All right. We went in a roundabout way of getting to where we needed to be, but we're here. The documentation is sufficient for the Court to indicate that at the time of this little one's birth he had been exposed to some type of drug. There was no indication that this drug was prescribed to mom at this time, in fact there was some indications that mom may have been acquiring it outside of the prescription procedure. In any case there's no doubt that the little one has had some difficulties because of the ingestion of the drugs by mom. There was some brief indication that mom may have sought some type of

12

rehab which I think is a magnificent thing to hear, but thirty (30) days doesn't cure a difficulty, so therefore I believe family services are going to be necessary at this time. So the Court is going to order family services for the little one at this time.

Accordingly, we find sufficient admissible evidence was presented to meet the preponderance of the evidence standard of proof required of the State in the adjudication hearing.

## DECREE

For the reasons assigned herein, we affirm the judgment of the trial court.

**AFFIRMED.**