LGREMILLION, Judge.
This is an appeal by the parents of H.B., Randy and Kristy,[2] from the trial court’s decision issuing custody of H.B. to a relative placement. For the following reasons, we affirm the judgment of the trial court.
FACTS
On June 12, 1998, H.B., then nine months old, was placed in the legal custody of the State of Louisiana, Department of Social Services (the State). The placement resulted from an Instanter Order, containing allegations of drug abuse and physical abuse in the form of inappropriate spanking, filed by the Jefferson Davis Parish Office of Community Service. After the removal, the parents participated in drug abuse counseling and a family management program, and submitted themselves to a psychological evaluation and periodic drug testing.
At a formal hearing on October 1, 1998, the parents denied allegations of neglect and abuse, but stipulated that the child was in need of care. On October 1 ¡>20, 1998, the trial court signed a judgment adjudicating the child in need of care. A reunification plan involving continued counseling and drug screening was prescribed for the parents with a review hearing fixed for March 11,1999.
On a trial placement, H.B. returned to hér parents’ home on December 23, 1998. According to the record, Kristy used marijuana the next day at a friend’s Christmas party. After the Department received a complaint of this incident, H.B. was again placed in the State’s custody. At the March 11th review hearing, the trial court released H.B. from the State’s custody, placing her legal custody and guardianship with her maternal aunt and uncle. However, this placement was temporary, as the trial court indicated future parental reunification was possible.
Randy has two other minor children who are placed in the temporary custody of their maternal grandmother. In an interview with an investigator from the Department, the children stated that they and their infant sister, H.B., were frequently and unnecessarily spanked by their parents. They also stated that they witnessed their parents smoking “pot” and knew where their parents’ drugs were stored. Additionally, the children stated that they were left unsupervised due to their parents’ drug use.
The record shows that during the nine month period of counseling and drug *146 screening, Randy tested negative for drugs each time, while Kristy tested positive at least three times. In their respective testimonies, Randy and Kristy testified that they were willing to have Kristy move out of the family home if H.B. were returned to Randy. Also, Randy offered to quit his part-time job to care for H.B. full time. However, these options had not been discussed with the Department 13before either parent testified at the hearing.
The trial court stated its reasons for placing H.B. in the custody of her maternal aunt and uncle:
[T]he closeness in time to the trial placement and her using marijuana in December — and if the figures ... are correct, it wasn’t just a casual use. It was some heavy use to get the level of THC in her system that the test showed. That concerns me. I don’t want to discourage them because they’ve made so much progress, but at the same time, I don’t know that I can risk this child.
[[Image here]]
... it’s not a hopeless situation for you. You certainly can get custody back. I simply don’t want you to think that by using drugs that this Court is going to allow that to go on and that you’re going to profit by doing that. I mean, you basically have a choice here, do you want your child, or do you want the drugs?
ISSUE
The parents argue that the trial court abused its discretion by failing to return the minor child to the custody of one or both of her parents.
LAW
A trial court’s determination regarding child custody is to be afforded great deference and should not be disturbed absent a clear abuse of discretion. Hawthorne v. Hawthorne, 96-89 (La.App. 3 Cir. 5/22/96); 676 So.2d 619, writ denied, 96-1650 (La.10/25/96); 681 So.2d 865.
Where both natural parents seek custody of an illegitimate child, the custody award is determined' according to the articles on custody incident to divorce. La.Civ.Code art. 245. La.Civ.Code art. 131 states that “the court shall award custody of a child in accordance with the best interest of the child.” Comment (a) to the 14article suggests this guideline is the “overriding test to be applied in all child custody determinations.” La.Civ.Code art. 134 provides guidance for determining the best interest of the child. Some pertinent factors listed in Article 134 are:
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
[[Image here]]
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
[[Image here]]
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
[[Image here]]
(12) The responsibility for the care and rearing of the child previously exercised by each party.
Comment (b) to Article 134 states that “the weight to be given to each factor is left to the discretion of the trial court.” Continued drug use should be considered in connection with these guidelines to decide if parental custody would be detrimental to the child. Page v. Page, 96-69 (La.App. 3 Cir. 5/8/96); 673 So.2d 1317.
We are cognizant that “[i]n a custody contest between a nonparent and a parent, the child should remain, when possible, in the natural parent’s custody ‘to maintain family unity and help the child identify [himself or herself] as part of the natural family unit.’ ” Kroics v. Kroics, 97-911, p. 4 (La.App. 3 Cir. 2/4/98); 705 So.2d 1302, 1305 quoting State, in Interest *147 of Sylvester, 525 So.2d 604, 607 (La.App. 3 Cir.1988). Further, custody should be awarded to a nonparent “if an award of joint lscustody or of sole custody to either parent would result in substantial harm to the child.” La.Civ.Code art. 133. Therefore, at the October 1998 hearing, the State not only had to overcome the presumption that vesting custody in the parents was in the best interest of H.B., but also had to prove that awarding custody to the parents would be detrimental to H.B. Love v. Love, 536 So.2d 1278 (La.App. 3 Cir.1988).
Title VI, Chapter 16 of the Louisiana Children’s Code governs cases where a child has been removed from her parents’ custody following an adjudication as a child in need of care. The pertinent articles provide in relevant part:
La.Ch.Code art. 701:
If at any point in child in need of care proceedings, the child is removed from his parents’ care and control and placed in the custody of the department, the provisions of this Chapter shall govern the subsequent review process until such time as the child achieves a permanent placement as defined in Article 603(15). La.Ch.Code art. 702(A):
The court shall conduct a dispositional review hearing within nine months after the disposition hearing if the child was removed prior to disposition or within twelve months if the child was removed at disposition, but in no case more than twelve months after the removal. Dis-positional reviews shall continue to be held at least once every twelve months thereafter until the child is permanently placed or earlier upon motion of a party for good cause shown or on the court’s own motion.
La.Ch.Code art. 603(15):
“Permanent placement” means:
(a) Return of the legal custody of a child to his parent(s).
(b) Placement of the child under a guardianship of the person.
(c)Placement of the child with adoptive parents pursuant to a final decree of adoption.
| i;La.Ch.Code art. 716:
A judgment of disposition may be modified if the court finds that the conditions and circumstances justify the modification.
“The burden of proving justification for modification of a custody disposition of a child earlier found in need of care is on the party who seeks to modify the disposition of custody.” State in the Interest of S.G., 95-2063, p.5 (La.App. 1 Cir. 3/25/96); 676 So.2d 109, 111, citing State in the Interest of Tooraen, 397 So.2d 69 (La.App. 2 Cir.1981). Further, the burden placed upon a parent who seeks to regain custody after custody has been given to a nonparent is as follows:
[A]t a subsequent hearing to change custody brought by the natural parent previously deemed unfit, the burden of proof should rest on that natural parent to demonstrate that he or she had rehabilitated and that facts which gave rise to him or her being deprived of custody at the initial hearing no longer exist.
Fowler v. Fowler, 98-953, p.5 (La.App. 3 Cir. 12/9/98); 722 So.2d 125, 129, citing Gordy v. Langner, 502 So.2d 583, 587 (La. App. 3 Cir.1987), writ denied, 503 So.2d 494 (La.1987).
In regards to a natural parent’s burden of proof, the Louisiana Supreme Court held that “ ‘reformation’ means more than mere cooperation with agency authorities. More importantly, reformation of the parent is shown by a ‘significant, substantial indication of reformation ... such as altering or modifying in a significant way the behavior which served as a basis for the State’s removal of a child from the home.’ ” State in the Interest of S.M., 98-0922, p.10 (La.10/20/98); 719 So.2d 445, 450, quoting State in the Interest of E.G., 95-0018 (La.App. 1 Cir. 6/23/95); 657 So.2d 1094, writ denied, 95-1865 (La.9/1/95); 658 So.2d 1263.
*148 [^Accordingly, in the instant case, the burden of proof shifts to Randy and Kristy to show that they have rehabilitated and that the facts that gave rise to their being deprived of the custody H.B. no longer exist. We find that they have failed to meet that burden of proof. Moreover, the facts that gave rise to their being deprived of the custody of H.B. still exist. The trial court saw Kristy’s continued drug use, particularly while H.B. was in trial placement, as a sign that awarding custody to the parents would be contrary to the child’s best interest. The trial court’s main concern was that Kristy used marijuana the day after H.B. was placed back in her custody and tested positive during her rehabilitation period. Although Randy tested negative, the trial court felt that awarding him custody was not in H.B.’s best interest, since Kristy was living in the family home. Randy and Kristy were willing to live apart temporarily, but had not discussed the possibility with the State or made alternate living arrangements for Kristy. We agree with the trial court that Kristy’s drug use could be especially dangerous to H.B., since she is not old enough to care for herself. Further, H.B.’s removal from the home does not drastically change the family unit, since Randy and Kristy no longer have custody of the two older children.
In Kroics, the child was placed in the custody of the husband’s brother and the brother’s wife, who provided a stable, loving environment and nurtured the child. In the case sub judice, H.B. is temporarily in the custody of her maternal aunt and uncle, who provide a stable environment and also live near her parents. H.B.’s living arrangement enables Randy and Kristy to continue counseling and therapy, while remaining in close contact with H.B. We, therefore, find that the trial court did not abuse its discretion by not returning H.B. to Randy and Kristy.
^CONCLUSION
Based on the foregoing, we affirm the decision of the trial court. Costs of this appeal are to be cast to the defendants, Randy and Kristy.
AFFIRMED.

. The defendants are the natural parents of H.B., but are not married.