MOORE, J.
|2Both the father, DLW Sr., and the child, DLW Jr., appeal a “judgment of adjudication and/or disposition” finding the child in need of care and ordering him into the custody of the Department of Social Services. For the reasons expressed, we affirm the order of custody but vacate in part and remand for further proceedings in accordance with the law.

Procedural Background

The child, a boy, was born on December 21, 1999; the mother and father were never married. According to the petition, the child had been living with his father since 2001, but in April 2010 the mother told him (the father) that she was about to be incarcerated and wished to relinquish her parental rights.
On April 23, 2010, the father filed a petition in the 42nd JDC seeking permanent custody, subject to the mother’s reasonable visitation. However, when the district court judge saw the petition, he recognized that the father |3had convictions in 1985 for sexual battery in 1989 for aggravated sexual battery. He stated from the bench that neither he nor any court in any state would grant custody to a man with this kind of criminal record. He denied the father’s rule to show cause and promptly phoned the Office of Community Services (“OCS”), instructing that office to issue an instanter removal order. Even though it had no open case or reported complaints against the father, OCS complied.
OCS agent Quwanda Forest executed an affidavit stating that the father “has a lengthy criminal history which includes multiple aggravated rape charges, aggravated sexual battei'y, simple battery, child predator, simple criminal damage to property, and fugitive.” Further, the father “is illiterate and was presented a child custody and visitation agreement from [the mother] on August 13, 2009, which lists her as the custodian * * * granting her control and supervision of the child’s upbringing.” Finally, she alleged the child was too young to care for himself, and there was good cause to believe that he could not be adequately protected from “further abuse and/or neglect.” The court signed an instanter removal order on April 28, 2010, and appointed counsel for the child, father and mother.
14According to the court minutes, a continued custody hearing was held on April 29, after which the court ordered the child held in OCS’s continued custody; the record contains no transcript of this.
On May 26, the state filed the instant petition to declare the child in need of care. The petition recited that the district court had signed the instanter order and the continued custody order; it otherwise reprinted the paragraphs of Ms. Forest’s affidavit. Neither the child, father nor mother filed any responsive pleading. OCS filed a case plan noting that the child had done very poorly in foster care, that each parent wanted him placed in his or her respective home, and that the goal was reunification.
At the adjudication hearing on June 22, the only witness was Ms. Forest, the OCS child welfare specialist. She testified that OCS started this case because the judge ordered the child into care; her office had no investigation into or complaints about the father. She testified that the father had a criminal history of “aggravated rape charges, aggravated sexual battery and a child predator.” The district attorney offered copies of the father’s 1985 and 1989 convictions, but these have not been included in the appellate record. Finally, she testified that OCS’s action was based *1041 on “dependency” of the father and lack of supervision by the mother.
[ 5On cross-examination, Ms. Forest admitted that the father’s home was adequate, the child had suffered no physical injury, and there was no evidence that the father failed to provide food, clothes or shelter. Further, OCS performed no intake assessment, but merely followed the judge’s order, and there was no allegation that the father abused DLW Jr. or any other child of his. She added that she had never seen an order like this before. Counsel for the child offered into evidence a copy of the Department of Social Services’ Policy Manual, Chapter 4, Appendix 4-B, containing definitions of “child abuse and neglect,” “lack of adequate supervision/sexual abuse,” “passive sexual abuse,” “abandonment” and “dependency.”
The district judge upbraided Ms. Forest, reminding her that she was not there to represent the child’s wishes. He stated that he would never grant custody to a convicted sex offender. He also took judicial notice that the mother had relinquished her parental rights; however, the mother spoke up, denying that she did so. The judge stated that the issue was not dependency, but where to place a child whose mother relinquished parental rights and whose father was not fit for custody. He also refused to let the father call the child’s teacher to testify, declaring this was irrelevant; the state stipulated that DLW Jr. was “doing fine in school.”
IfiThe court ruled from the bench that it had to place a child with no order of custody, and the only place was with the State of Louisiana. It declared the child in need of care and recused itself from the father’s ongoing custody proceeding.
The father and child have appealed separately. The mother has not appealed or filed a brief.

Discussion: No Cause of Action, Judicial Confession

By their first assignments of error, the father and child urge that the state’s petition failed to state a cause of action under La. Ch. C. art. 606 A[1] in that it did not allege that the child was a victim of abuse, a victim of neglect, or any of the other defined grounds. The child also argues that the state failed to show that the district court judge was a mandatory reporter under La. Ch. C. art. 603(15). The state responds that nobody filed an exception of no cause of action.
Generally, no evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action. La. C.C.P. art. 931. *1042 However, the jurisprudence recognizes an exception that allows the court to consider evidence admitted without objection to enlarge the pleadings. City of New Orleans v. Board of Directors, 98-1170 (La.3/2/99), 739 So.2d 748; Gipson v. Fortune, 45,021 (La.App. 2 Cir. M/27/10), 30 So.3d 1076, writ denied, 2010-0432 (La.4/30/10), 34 So.3d 298. Considering that the parties neither filed an exception of no cause of action in the district court nor objected to the introduction of evidence, we consider the pleadings enlarged to incorporate the evidence admitted. The issue of whether the record will support the adjudication is discussed below.
By his fourth assignment of error, the father urges the district court erred in finding that the mother abandoned or failed to properly supervise the child. He contends that the court’s “judicial notice” was based solely on an allegation in his own petition for permanent custody, a case in which the court refused to hold a hearing. The state responds that it proved the mother wished to relinquish her parental rights because she was about to go to jail.
A judicial confession is a declaration made by a party in a judicial proceeding; it constitutes full proof against the party who made it, and may be revoked only on the ground of error of law. La. C.C. art. 1853; Cichirillo v. Avondale Indus. Inc., 2004-2894 (La.11/29/05), 917 So.2d 424; Anderson v. Houston, 44,766 (La.App. 2 Cir. 9/23/09), 22 So.3d 1029. A declaration made by a party’s attorney or mandatory has the same effect as one made by the party himself. La. C.C. art. 1853, Revision Comment (b); C.T. Traina Inc. v. Sunshine Plaza Inc., 2003-1003 (La.12/3/03), 861 So.2d 156. The father’s petition for custody, filed in the 42nd JDC, alleged in ¶ 11 Lthat the mother told him “she had outstanding criminal charges in Caddo Parish, would soon be incarcerated and desired to relinquish her parental rights to his son to him and her two other children to her mother.” This qualifies as a judicial confession by DLW Sr. While the mother may wish to contest it in the custody case, the father may not do so in this juvenile proceeding.
These assignments lack merit.

Judgment of Adjudication

By their second assignments of error, both the father and child urge the district court committed manifest error in assigning substantial weight to the father’s 20-year-old criminal history. They concede that under Ch. C. art. 606 A(5), the state may step in and protect a child who has not yet suffered abuse, if he is at substantial risk of abuse. State in Int. of KB, 32,350 (La.App. 2 Cir. 5/5/99), 737 So.2d 150. They argue there was absolutely no evidence that the father ever perpetrated any act of abuse on this child or any other child of his, that his sex offense convictions from the 1980s are no longer relevant, and that his status as a sex offender does not justify the finding of need of care.
By the father’s fourth and the child’s third assignments of error, they urge the court erred in finding a preponderance of evidence of abuse or | ^neglect. They show that preponderance is the standard under La. Ch. C. art. 665, and they cite the definitions in the Policy Manual to argue that the evidence does not satisfy any of them.
The state responds that the court was entitled to look at the father’s convictions and assign them any weight it deemed appropriate to protect the child’s safety. It also submits that the father was “unsuitable due to his criminal history of inappropriate sexual behavior.”
At the adjudication hearing, the state has the burden to prove the allegations of the petition by a preponderance of evidence. La. Ch. C. art. 665; State in *1043 Int. of JK, 33,878 (La.App. 2 Cir. 6/23/00), 764 So.2d 287, unit denied, 2000-2637 (La.10/6/00), 771 So.2d 83. Proof is sufficient to constitute a preponderance of the evidence when the entirety of the evidence, both direct and circumstantial, establishes that the fact or causation sought to be proved is more probable than not. Talbot v. Talbot, 2003-0814 (La.12/12/03), 864 So.2d 590; Pearce v. Medallion Const., 36,351 (La.App. 2 Cir. 11/6/02), 830 So.2d 576. The appellate court will not set aside the findings of fact in a juvenile matter in the absence of manifest error or unless those findings are plainly wrong. In re AJF, 2000-0948 (La.6/30/00), 764 So.2d 47; State in Int. of CH, 44,401 (La.App. 2 Cir. 5/20/09), 14 So.3d 601, writ denied, 2009-1581 (La.7/24/09), 17 So.3d 362. Upon a finding of manifest error, the appellate court shall render any judgment which is just, legal and proper upon the record on appeal. La. C.C.P. art. 2164; Fowler v. Fowler, 1998-953 (La.App. 3 Cir. 12/9/98), 722 So.2d 125.
On close review, we are constrained to find no proof that would satisfy the first three grounds for finding a child in need of care, La. Ch. C. art. 606 A(l)-(3). Ms. Forest testified that after an OCS investigation, there was no evidence that the child was the victim of abuse perpetrated, aided or tolerated by the father, or by any other person; that the child was the victim of neglect; or that the child was without necessary food, clothing, shelter, medical care or supervision because of the absence of the father. The state offered no other evidence with respect to these grounds. As for the fourth ground, the father alleged in his custody petition that the child’s mother was about to be incarcerated and would be unable to retain custody. This would satisfy Art. 606 A(4) with respect to the mother, but since the state conceded that DLW Jr. has been in the custody of his father since 2001, this fact does not appear relevant to the father’s custody.
As to the fifth and final ground, Ch. C. art. 606 A(5) provides an intermediate method whereby the state may step in and protect children who are at risk of abuse or neglect before they suffer actual abuse. State in Int. of KB, supra. The state alleged, and Ms. Forest testified, that the father had “multiple aggravated rape charges, aggravated sexual battery, simple battery, child predator, simple criminal damage to property, and fugitive.” These allegations, if proved, may indeed constitute a risk of abuse or neglect warranting a finding of need of care under Art. 606 A(5). However, by their nature these allegations are also subject to proof by court minutes and other documents. We are constrained to find that the only proof offered was the 1985 and 1989 convictions for sexual battery and aggravated sexual battery, respectively. With due respect to the discretion of the district court, making these the sole basis for a finding of need of care is not immediately clear, in that they predate this child’s birth by 10 years or more, the father has exercised custody since 2001, and in that time OCS has never had any cause to investigate the household. In its present state, the proof is insufficient to support the adjudication.
Nonetheless, the remaining allegations, especially that of child predator, are serious enough that the state should have the opportunity to prove them by proper evidence. Also, proof of more recent criminal conduct would be extremely relevant to show the need of care under Art. 606 A(5). For these reasons, we find the most appropriate remedy under La. C.C.P. art. 2164 is to affirm the order of custody pending final disposition, but |12otherwise to reverse the judgment of adjudication and remand the case for further proceedings in accordance with the law.

*1044
Conclusion

For the reasons expressed, the order of custody is affirmed pending final disposition of the case. However, the adjudication is vacated insofar as it found DLW Jr. in need of care and the case remanded for further proceedings in accordance with the law. No costs are assessed.
AFFIRMED IN PART, VACATED IN PART AND REMANDED.

. Art. 606. Grounds; child in need of care
A. Allegations that a child is in need of care must assert one or more of the following grounds:
(1) The child is the victim of abuse perpetrated, aided, or tolerated by the parent or caretaker, by a person who maintains an interpersonal dating or engagement relationship with the parent or caretaker, or by a person living in the same residence with the parent or caretaker as a spouse whether married or not, and his welfare is seriously endangered if he is left within the custody or control of that parent or caretaker.
(2) The child is a victim of neglect.
(3) The child is without necessary food, clothing, shelter, medical care, or supervision because of the disappearance or prolonged absence of his parent or when, for any other reason, the child is placed at substantial risk of imminent harm because of the continuing absence of the parent.
(4) As a result of a criminal prosecution, the parent has been convicted of a crime against the child who is the subject of this proceeding, or against another child of the parent, and the parent is now unable to retain custody or control or the child's welfare is otherwise endangered if left within the parent’s custody or control.
(5) The conduct of the parent, either as principal or accessory, constitutes a crime against the child or against any other child of that parent.